# FIFTH DISTRICT, 1895.

### HENRY MARKS V. VIOLA BELL.

#### No. 781.

**Judgment Lien—Abandoned Homestead—Statute Construed.**—Under article 3159, Revised Civil Statutes (1879), the record of a judgment being valid, a lien will attach to homestead property owned at the time, which afterwards becomes subject to execution by losing its homestead character while it remained the property of the judgment debtor.

APPEAL from Dallas. Tried below before Hon. EDWARD GRAY.

*Maurice E. Locke,* for appellant, cited Sampson v. Williamson, 6 Texas, 102; Bomback v. Sykes, 24 Texas, 217; Lee v. Kingsbury, 13 Texas, 68; 1 Black on Judg., secs. 432, 460; Freem. on Judg., sec. 368; 93 Am. Dec., 357, note; Greenway v. Cannon, 3 Humph. (Tenn.), 177; 39 Am. Dec., 161; Relfe v. McComb, 2 Head (Tenn.), 558; 75 Am. Dec., 748; Elston v. Castor, 101 Ind., 426; 51 Am. Rep., 754; Rev. Stats., arts 4332, 4334; Russell v. Nall, 2 Texas Civ. App.. 60; Grace v. Wade, 45 Texas, 522; Mainwarring v. Templeman, 51 Texas, 205; Bonner v. Grigsby, 84 Texas, 330.

*Crawford & Crawford,* for appellee.—1. The Constitution not only protects the homestead from forced sale, but goes further, and declares that no mortgage, trust deed, or other lien thereon shall ever be valid, except for the purchase money or improvements. Willis v. Mike, 76 Texas, 83.

The levy of an attachment upon the homestead creates no lien, and is an absolute nullity. Mayers v. Paxton, 78 Texas, 199.

The record of a judgment creates no lien upon the homestead. Freiberg, Klein & Co. v. Wolzen, 85 Texas, 265.

2. Whatever may be the rule in other States, under our Constitution all attempts to create a lien upon the homestead, except for purchase money or improvements, are void—not voidable, but absolutely void; and are not vitalized by the divesture of the homestead character. Inge v. Cain, 65 Texas, 75; Hays v. Hays, 66 Texas, 606.

FINLEY, ASSOCIATE JUSTICE.—This case is presented to us upon an agreed statement, as follows:

"In accordance with the provisions of article 1414 of the Revised Statutes of the State of Texas, the parties to the above numbered and entitled cause hereby agree on the following statement of the case, and of the facts proven; said statement to be filed among the papers of the

cause, and on appeal to be copied into the transcript in lieu of the pleadings and statement of facts.

"This suit was brought on June 10, 1893, to quiet plaintiff's title to the following described property in Dallas County, Texas: A part of Middleton Brothers' Oak Grove addition to the City of Dallas; beginning 200 feet south 45° east from the east corner of McKinney avenue and Central avenue; thence north 45° east 211–1/12 feet; thence south 45° east 50 feet; thence south 45° west 211–1/12 feet; thence north 45° west 50 feet to the beginning.

"Plaintiff's original petition alleged, that he owned said premises and was in actual possession thereof at the time of instituting his suit; that defendant claimed title to said premises by virtue of certain conveyances described in the petition; that plaintiff and defendant both traced title back to one C. H. Edwards as a common source, setting forth at length the nature of the several links of their respective chains of title from Edwards. It contains the usual and appropriate allegations of an action quia timet, and claimed that the instruments upon which defendant's chain of title was based should be declared null, and plaintiff's title be quieted, and for general relief.

"The links of plaintiff's chain of title from Edwards were alleged to be the following:

"1. March 13, 1890, Edwards, for a recited consideration of $2150 deeded the property in controversy to the community estate of one Harry Herrscher and Jane A. Herrscher, his wife, sub nomene Jane A. Herrscher.

"2. May 20, 1891, in the County Court of Galveston County, Texas, the firm of Freiberg, Klein & Co. recovered judgment against said Harry Herrscher for $349.80, and costs, the cause of action sued upon being a debt contracted by said Harry Herrsher during his marriage with said Jane A. Herrscher.

"3. May 29, 1891, an abstract of said judgment was duly recorded in the office of the county clerk of Dallas County, Texas.

"4. June 16, 1891, an execution issued on said judgment, and was returned unsatisfied.

"5. September 6, 1892, another execution issued on said judgment, and was levied by the sheriff of Dallas County, Texas, on all the estate, right, title, and interest which the said Harry Herrscher on May 29, 1891, or at any time thereafterwards, had in and to said property.

"6. The first Tuesday in October, 1892, by virtue of said execution and the levy thereof, the sheriff of Dallas County sold said property to one Neal Starke for $50, and thereafter, on October 8, 1892, executed and delivered to said Starke his sheriff's deed to said property.

"7. May 26, 1893, said Starke deeded said property to plaintiff.

"The links of defendant's chain of title from Edwards were alleged to be the following:

"1. March 13, 1890, said Edwards conveyed said property as above described.

"2. By deed of trust dated and acknowledged September 23, 1891, said Herrsher and wife conveyed said property to one L. A. Wilson, in trust, to secure the payment of a certain promissory note therein described. Said deed of trust was filed for record in the office of the county clerk of Dallas County, Texas, on September 25, 1891, and duly recorded.

"3. May 13, 1893, said Wilson, trustee, conveyed said property to defendant, reciting that such conveyance was made in pursuance of a sale of said property, made by him to defendant on August 2, 1892, by virtue of and in accordance with the provisions of said deed of trust.

"To this petition defendant answered: 1. A general denial and plea of not guilty. 2. A special plea, 'that at the time of recording the judgment of plaintiff against said H. Herrscher, in Dallas County, the land in controversy was the homestead of said Harry Herrscher and wife (he being the head of a family at that time), and exempt from the lien attempted to be created against said land. Wherefore, defendant says that the pretended lien of plaintiff on said land is null and void, and of no effect whatever against said land. Defendant prayed for a judgment establishing her title to said land, for a writ of restitution, and for general relief.

"Plaintiff demurred to defendant's special plea of homestead.

"The case was tried upon an agreed statement of facts and issues of law, which were signed by the attorneys of both parties, and filed among the papers of the suit. It was agreed that plaintiff was in possession, and that both parties claimed under Edwards as a common source. It was agreed, that plaintiff and defendant deraign their respective title from said C. H. Edwards as set forth in plaintiff's original petition, the allegations whereof pro tanto are hereby adopted and made a part of this agreed statement of facts; and that every deed, trust deed, judgment, abstract of judgment, execution, levy, sheriff's sale, trustee's sale, or other link in the respective chains of title as set forth in said petition, is regular and complete in form. That on May 29, 1891, and thereafter, the premises described in plaintiff's original petition formed a part of the community estate of Harry Herrscher and his wife, Jane A. Herrscher; and that the judgment of Freiberg, Klein & Co. against Harry Herrscher, described in said petition, constituted on said date, and thereafter until October 8, 1892, a charge upon said community estate of Herrscher and wife, and a lien upon all property to which a judgment lien would attach; but the debt upon which the same was secured was a simple contract debt carrying no lean upon any specific property.

"That on May 29, 1891, and thereafter, the premises described in plaintiff's original petition constituted the homestead of Harry Herrscher and his wife, Jane A. Herrscher; but the same ceased to be the homestead of said Herrscher and wife on or before September 23,

1891; that said Herrscher and wife continued to own said premises until May 24, 1892, when they sold the same to one J. N. Wilkerson.

"It was further agreed, that 'when the judgment in favor of Freiberg, Klein & Co. was recorded the property in question was the homestead of Herrscher and wife, and the question to be determined, is, did the lien of the judgment attach to the property when it ceased to be their homestead? If the lien did attach, plaintiff to have judgment, otherwise judgment to go for defendant for lot and rent, and costs.'

"The case was submitted to the court and argued by counsel as a whole, upon this agreed statement of facts and issues of law and pleadings as aforesaid. The court rendered judgment for the defendant, refusing to sustain plaintiff's demurrer to defendant's special plea of homestead. Plaintiff excepted to the judgment, and in open court gave notice of appeal within the time allowed by law.

"It is hereby agreed, that the only question for the court to consider is the same question of law submitted to the court below, did the lien of the judgment attach when the property ceased to be Herrscher's homestead? If it did, the judgment of the lower court is to be reversed, and judgment is to be rendered for plaintiff. If it did not, the judgment of the lower court is in all things to be affirmed."

*Opinion.*—Article 3159, Revised Statutes, reads: "*Lien of judgment, when.* When any judgment has been recorded and indexed, as provided in the preceding article, it shall, from the date of such record and index, operate as a lien upon all of the real estate of the defendant situated in the county where such record and index are made, and upon all real estate which the defendant may thereafter acquire situated in said county."

Section 50, article 16, of the Constitution, is as follows: "The homestead of a family shall be and is hereby protected from forced sale for the payment of all debts, except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead; nor shall the owner, if a married man, sell the homestead without the consent of the wife given in such a manner as may be prescribed by law. No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor or improvements made thereon, as herein before provided, whether such mortgage or trust deed, or other lien, shall have been created by the husband alone or together with his wife; and all pretended sales of a homestead involving any condition of defeasance shall be void."

It is urged by appellant that when the property ceased to be the homestead, and remained the property of the judgment debtor, the judgment lien attached thereto. On the other hand, appellee con-

tends that the property, being the homestead of the judgment debtor at the time the judgment was recorded, the judgment lien did not attach to the property when it lost its homestead character. This is the issue presented; there is no question of priority of liens involved. It is clear that a lien can not be fixed upon a homestead by a levy thereon under execution or attachment; and though the property loses its homestead character after the levy of execution or attachment, no lien attaches to the property by virtue of such levy. Willis v. Mike, 76 Texas, 82; Mayers v. Paxton, 78 Texas, 199. Neither can any contract lien be created upon the homestead except for the objects permitted by the Constitution, and no lien would attach under such contract upon abandonment of the homestead. Inge v. Cain, 65 Texas, 75; Hays v. Hays, 66 Texas, 606.

In the case of levy under execution or attachment, it is the levy that fixes the lien; and if it is not valid at the time it is made, no lien ever attaches to the property by virtue of such levy. 1 Black on Judg., secs. 432-460; Freem. on Judg., 368. The levy of an execution or attachment upon the homestead is absolutely void, and the fact that the property afterwards ceases to be exempt does not give life and validity to such levy.

It is also true that any contract for a lien upon the homestead, unless within the exceptions of the Constitution, is utterly void; no subsequent abandonment of the homestead will give validity to the contract; and the contract being wholly void, no lien can arise thereunder.

Does the fact that the property is exempt as the homestead when the judgment is recorded, prevent the judgment lien from attaching when the property ceases to be the homestead and remains the property of the judgment debtor?

The recording of a judgment is not the seizure of specific property for the purpose of applying it to the payment of a debt, as is the case in the levy of an execution or attachment. It is a statutory notice to the world that the defendant in the judgment owes the debt to the plaintiff, and by statute, this judgment, when properly recorded, becomes a charge upon all real property subject to execution situated in the county wherein the judgment is recorded, and which is owned by the judgment debtor at the time the judgment is recorded, or which he may thereafter acquire. It is certain that if the judgment had been recorded after the abandonment of the homestead, and when it was subject to execution, that the judgment lien would have attached. As the recording of the judgment was valid in all respects in the first instance; and not a specific seizure of the homestead property, how could a record thereof at a later date give greater force and effect to it? To ask the question, announces the answer—that the original record of the judgment would be of equal force. Under our statute, a recorded judgment hangs over the defendant, and by virtue of it a lien attaches to all his real property in the county where the judgment

is recorded, which he owns at the time the judgment is recorded or acquires thereafter, and which is subject to execution, or becomes subject to execution during the life of the judgment record. The lien does not relate to the date of the recording of the judgment, but to the time when the property becomes subject to the lien. If two or more independent judgments against the same party are recorded, and property becomes subject thereto, the judgment first recorded does not take priority, but the liens attach at the same time and are co-ordinate. 2 Freem. on Judg., sec. 368; 1 Black on Judg., secs. 432–460.

The record of the judgment being valid, and the property becoming subject to execution by losing its homestead character, while it remained the property of the judgment debtor, the fact that it was once exempt as a homestead furnishes no sound reason why the judgment lien should not attach to it.

In answer to the question submitted, we decide that the judgment of appellant became a lien upon the property when it ceased to be the homestead.

The judgment of the court below is reversed, and here rendered for appellant.

*Reversed and rendered.*

Delivered May 1, 1895.