## H. J. Chamberlin v. O. H. Leland.

### No. 1010. Decided May 9, 1901.

**1. Homestead—Exemption to Survivors—Exchanging.**

The homestead exemption, on the death of the wife, continued in favor of the husband though no longer head of a family; but though such existing homestead could be exchanged for another without losing the exemption, he could not acquire a new one. (Pp. 504, 505.)

**2. Same—New Homestead.**

A surviving husband who sold the homestead and used the proceeds in discharging indebtedness against and making improvements upon a tract of 2200 acres which he already owned, and then, being no longer the head of a family, fixed his residence on 200 acres of such tract, acquired no homestead exemption therein. (Pp. 503-505.)

**3. Same—Cases Limited.**

Such transaction was not within the rule announced in Schneider v. Bray, 59 Texas, 668, and Watkins v. Davis, 61 Texas, 414, as to exchange of homesteads, and the doctrine there announced will not be carried further. (P. 505.)

Error to the Court of Civil Appeals for the Third District, in an appeal from McLennan County.

Chamberlin sued Leland for land and had judgment. Leland appealed and it was reversed and judgment rendered in his favor, whereupon Chamberlin obtained a writ of error.

*John G. Winter,* for plaintiff in error.—These acts constitute an abandonment of the homestead held by such surviving husband; and having so abandoned it, and being no longer the head of a family, he acquires no homestead right and exemption in the 200 acres although reserved and designated to that use by him. Const., sec. 52, art. 16; Rev. Stats. 1895, arts. 2395, 2396, 2397; Acts 1897, p. 131; Schneider v. Bray, 59 Texas, 668; Wolfe v. Buckley, 52 Texas, 641.

*J. B. Scarborough,* for defendant in error.—Under the facts stated Leland had homestead rights in the land that should have protected it from forced sale under the Constitution and laws of Texas. Since the cases of Wolfe v. Buckley, 52 Texas, 641, and Schneider v. Bray, 59 Texas, 670, it is not an open question in Texas that one possessed of homestead rights may exchange that homestead for another, notwithstanding all constituents of the family may have disappeared. In other words: Admit that Leland was no longer the head of a family, having a home exempt to him because he had acquired it while the head of a family, he could exchange his city home for one in the country, or he could sell his city home and with the proceeds buy one in the country. Now all agree that if he had taken the price of his city home and paid for the 200 acres it would be exempt to him, and this position is well sustained by the authorities cited and others. Now, in what material point does this case differ from that? Creditors who were then creditors had no claim upon the city home. The proceeds of the city home are spent in enhancing the value of the property upon which they might have claim, and a portion of this property of equal or less value than the homestead money spent on the whole tract is dedicated for homestead.

BROWN, ASSOCIATE JUSTICE.—O. H. Leland, being the head of a family consisting of a wife and one son, resided in the city of Waco on a lot which he claimed as his home. The wife died prior to 1899 and the son became of age, after which, while still using the property as his home, O. H. Leland, joined by his son, sold it, intending at the time to use the proceeds as he subsequently did. During the time stated, Leland owned 2200 acres of land in the county of McLennan on which there was a mortgage to secure a debt of $25,000, which was for the purchase money of the tract of land and improvements. Leland applied the proceeds of the homestead on the mortgage debt and in making valuable improvements upon the entire tract of 2200 acres, building houses, and other improvements. One house was placed upon the land in controversy in this suit. What amount was used in discharge of the mortgage debt and what portion in making improvements upon the land is not shown. In April, 1899, after the city homestead

was sold, Leland, not then the head of a family, took possession of the 200 acres in controversy and has resided upon it ever since, claiming it as his homestead. In October, 1899, Leland sold 2000 acres of the tract, reserving the 200 acres in suit for his home. The purchaser of the 2000 acres undertook to discharge the debt upon the whole tract. The amount of the purchase money received for the city homestead is not stated, but it was agreed that it was equal to the value of the 200 acres claimed by Leland as his homestead. Leland owns no other real estate.

On February 3, 1900, the plaintiff recovered a judgment against Leland based upon a debt contracted after he took possession of the 200 acres as his home. Execution was regularly issued upon the judgment and levied upon the land and sale made of it on the first Tuesday in April, 1900, H. J. Chamberlin becoming the purchaser. The only question presented in the case is the right of Leland to have the 200 acres of land exempted as his homestead. Chamberlin sued Leland for possession of the land; the case was tried before the court and judgment was given for Chamberlin that he recover the land of Leland, which judgment the Court of Civil Appeals reversed and rendered judgment that the plaintiff Chamberlin take nothing by his suit, holding that the 200 acres of land became the homestead of Leland under the facts stated.

At the time Leland sold his city homestead it was exempted from forced sale, although he was not then the head of a family, because it had been exempted during the existence of his family, which was dissolved by death of his wife and the majority of his son. Under the rule laid down in Taylor v. Boulware, 17 Texas, 74, the exemption continued to Leland notwithstanding the family was extinct.

When Leland moved upon the 200 acres of land now claimed for a homestead, he could not acquire an exemption in that place because he was not then the head of a family, unless it be true that his former homestead was in fact converted into and became the land now claimed by him. In the case of Schneider v. Bray, 59 Texas, 668, the owner of the homestead exemption, a widow, whose family was dissolved by the death of her husband, exchanged the exempted homestead for a place in Blossom Prairie, in Lamar County, Texas, with the intent to immediately occupy it as a home and did in fact move upon it as such and continued to reside thereon. This court held that the home which was acquired in exchange for that which was exempted took the place of the former homestead and was itself protected from forced sale.

In the case of Watkins v. Davis, 61 Texas, 414, a widow whose family had consisted of herself and husband continued to occupy the homestead after the death of the husband, and, contemplating the purchase of the land in suit, sold her home and invested the money received in the new home, to which she immediately removed, and continued to occupy it as a home. The court held that this was in effect an exchange of one place for the other; that it came within the rule

announced in Schneider v. Bray, and the new homestead was exempted from the claims of creditors.

In the case before the court, Leland owned the land in controversy before he sold his homestead; consequently he did not exchange his home in the city for the land sought to be protected from sale, as was the case in Schneider v. Bray, neither did he buy the property now in question with the proceeds of the home which he had in Waco, as in Watkins v. Davis. It follows that the property now claimed by him does not represent that which he had previously occupied, and the facts of this case bear no such analogy to the cases cited above as will justify the application of the same rule of law to the decision of this case. We are of opinion that the cases of Schneider v. Bray and Watkins v. Davis, before cited, have gone quite far enough in that direction and should mark the limit of the rule of law announced in those cases.

The 200 acres of land in controversy does not in any sense represent that property which the law exempted to O. H. Leland, and, as he could not acquire a homestead exemption by his settlement, the land was subject to sale under the judgment of Chamberlin, who acquired title to it by his purchase under the judgment and execution against Leland. The Court of Civil Appeals erred in reversing the judgment of the District Court and rendering judgment in favor of Leland. It is therefore ordered that the judgment of the Court of Civil Appeals reversing that of the District Court be reversed and that the judgment of the District Court be affirmed.

*Reversed and judgment of District Court affirmed.*